1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
3  MARTHA BOERSCH (CABN 126569)
   Chief, Criminal Division
4  DAVID J. WARD (CABN 239504)
   Assistant United States Attorney
5
6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       FAX: (415) 436-7230
8      david.ward@usdoj.gov

9  Attorneys for United States of America

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,          )  CASE NO. 3:24-CR-00445 SI
                                       )
14          Plaintiff,                 )  **UNITED STATES' SENTENCING**
                                       )  **MEMORANDUM**
15      v.                             )
                                       )
16  FUTSENG "DALE" CHEN,               )
                                       )
17          Defendant.                 )
                                       )
18                                     )

19                              **INTRODUCTION**

20          Defendant Futseng "Dale" Chen comes before this Court for sentencing after pleading guilty to

21  one count of Smuggling in violation of 18 U.S.C. § 554(a) and one count of Lacey Act False Labeling

22  in violation of 16 U.S.C. § 3773(a)(2). Defendant Chen admitted to submitting or causing to be

23  submitted at least 278 false and fraudulent export documents to U.S. Customs and the U.S. Fish &

24  Wildlife Service over a five and a half year period, all in order to fraudulently avoid paying export fees.

25  Losses to the U.S. because of this scheme totaled over $41,000.

26          Following his arrest, Chen's U.S. Fish & Wildlife Service export license was suspended. But

27  Chen disregarded this suspension and, within days of his arraignment and release on bond in this case,

28  began conspiring with another individual to fraudulently use that individual's export license to enable

him to continue to fraudulently export wildlife. As part of this, he continued submitting false and fraudulent export documents to avoid U.S. customs and U.S. Fish and Wildlife export duties. He did this at least 52 times. When his new fraud was discovered and a federal search warrant was executed for his cell phone at his business, he refused to turn over the device to law enforcement, then falsely claimed he couldn't find it. His counsel turned it over after being contacted by the government the following day.

Chen's crimes in this case come after a prior indictment and conviction, in 2009, for nearly identical federal crimes. Then, Chen was charged with one count of felony smuggling, one count of violating the Lacey Act, and one count of Transport of Wildlife in Violation of State Law. Because it was a first offense, he was allowed to plead guilty to a misdemeanor, and he received three years of probation. But this conviction did not deter or reform Mr. Chen. Between then and the beginning of the fraud in this case in 2018, as the Presentence Report documents, Chen was subject of multiple export violation investigations and citations, and faced dozens of seizures of illegally imported wildlife.

Chen's conduct in this case, his disregard for his terms of pretrial release and his continued export fraud, his criminal history, and his long record of export violations together, all justify and warrant a significant custodial sentence. The government respectfully asks the Court sentence Mr. Chen to 18 months custody followed by three years of supervised release.

## BACKGROUND

### I.  Offense Conduct

*a.  Indictment*

On August 6, 2024, defendant Chen and his company, Sealogic International Inc. were charged in an Indictment with three counts of Smuggling, in violation of 18 U.S.C. § 554(a), and two counts of Lacey Act False Labeling in violation of 18 U.S.C. § 3372(d)(2). *Dkt. 1*. The Indictment alleges that Chen, through Sealogic, a Hayward-based tropical fish importer and exporter, knowingly failed to file proper export permits and submitted false export permits, all intended to allow Mr. Chen to evade thousands of dollars in export customs payments.

Chen admitted that on 199 occasions, he submitted export paperwork that falsely stated that the value of the export shipment was under $2,500, knowing that by doing so, he could evade export duties and fees. *Dkt. 47*. Chen has admitted that on at least 79 different occasions he knowingly made and

submitted false export documents to U.S. Customs and U.S. Fish & Wildlife that falsely understated the true value of the wildlife being exported. *Id.* By his own admission, Chen exported over $1.4 million in wildlife over five and a half years without paying the proper export duties. In total, Chen admits to defrauding the U.S. government of $41,292.

                b.        *Post-Indictment Criminal Conduct*

Defendant Chen continued his criminal conduct, essentially without interruption, after his arrest and release on bond in this case. *See Dkt. 19* (United States Motion to Revoke Bond). Chen was arrested and appeared before the Honorable Magistrate Lisa J. Cisneros on August 8, 2024. *Dkt. 2*. He was released on a $50,000 unsecured bond, guaranteed by two sureties, and ordered to surrender his passport and to remain in the Northern District of California, among other conditions. *Dkts. 6, 7*. That same day, Chen was served notice from Fish & Wildlife Service that Chen and Sealogic's export license was suspended, effective immediately. *Dkt. 19*.

By his own admission in his Plea Agreement in this case, starting the day of his release from custody, Chen conspired with another individual (hereinafter Co-Conspirator #1) to use that individual's dormant wildlife export license to fraudulently resume Chen and Sealogic's import and export business in violation of federal import/export laws. *Dkt. 47* (Plea Agreement).

On August 8, 2024, the same day Chen was released from custody, Chen conspired with the owner of a San Jose-based tropical fish import/export company (hereinafter "Importer #1) to apply for a FWS import/export license in their name that Chen could use to continue to fraudulent export wildlife. *Dkt. 19* .¶ 6. Chen conspired with Importer #1's to submit an export license that listed Importer #1 as the "sole owner" of the company, and the license renewal application stated that their offices were in San Jose, California, and that their wildlife inventories were kept at another location in San Jose. *Id.* ¶ 7. The application required that the submitter certify that "*the information submitted in this application for a permit is complete and accurate to the best of my knowledge and belief. I understand that any false statement herein may subject me to the criminal penalties of 18 U.S.C. 1001*. *Id.* ¶ 7. The applicant checked the box "I agree." *Id.* This application was false, and designed to conceal the fact that Chen would be using their license to continue his illegal export business.

Chen admits that he paid the owner of Importer #1 "between $500 and $1,200 per shipment" to illegally use that individual's export license to continue his exports, despite being barred from export activity. *Dkt. 47.* Chen admits that between August 2024 and December 2024, he made or caused to be made 52 exports illegally using this individual's license. *Id.* Worse still, Chen admits that on at least 10 of these 52 occasions, he again submitted false and fraudulent export declarations in order to avoid paying export duties. *Id.* Put another way, Chen was charged in this case, arrested and released on bond, and simply continued the fraudulent export scheme for which he had just been charged.

In December 2024, FWS discovered the new fraudulent export scheme, and obtained and executed a search warrant at Chen's offices. *Dkt. 19.* Chen was present, and agents attempted to serve a search warrant on him for his iPhone. *Id.* Chen refused to surrender the device, claiming he didn't know where it was. *Id.* Chen turned over his device to defense counsel only after defense counsel was contacted by the government. *Id.*

    c. *Chen's 2009 Indictment and Plea*

Chen has a history of export crimes and export violations. In 2009, Chen was charged in a three-count indictment with Smuggling in violation of 18 U.S.C. § 545, Lacey Act False Labeling in violation of 16 U.S.C. § 3372(d) and 3373(d)(3)(A), and one count of Transport of Wildlife in Violation of State Law in violation of 16 U.S.C. § 3372(a)(2)(A). The indictment alleged that Chen was smuggling wild coral into the United States without proper declaration, submitting false import documentation to U.S. Fish & Wildlife, and importing wildlife in violation of California state law. *See U.S. v. Futseng "Dale" Chen*, 09-Cr-0155 CRB.

Chen was allowed to plead guilty to one count, Transport of Wildlife in Violation of State law, and was sentenced to three years of probation. *Id. Dkt. 17* (Judgment). Chen admitted then that he imported this wildlife (a fish known as a Walking Catfish), but mis-labeled them so as to avoid detection. *Id.* In its Sentencing Memorandum, the government noted that "the defendant has engaged in a pattern of similar behavior regarding falsifying information or mislabeling paperwork in the past." *Id., Dkt. 15.* The sentencing memorandum cited at least 16 occasions of Chen filing false export or import documentation – all prior to the 2009 conviction - and noted that U.S. Fish and Wildlife had issued citations for these types of violations from December 2004 to April 2008. This was written in 2009. Yet

U.S. SENTENCING MEMORANDUM
3:24-CR-00445 SI    4

despite is pattern of misconduct, and his prior conviction, Chen showed no remorse and did not reform. In the years between 2009 and 2024, when he was charged in this case , Chen continued his pattern of export and import violations. He was issued multiple export and import violation notices, and has had "dozens of seizures of illegally imported wildlife." *PSR* ¶ 17.

## DISCUSSION

### II. The Defendant's Sentencing Guidelines

#### a. USSG Calculations

The government agrees with U.S. Probation's calculation of the Guidelines. Specifically, the government and Probation agree that the Guidelines for defendant Chen are as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. §2Q2.1(a): | | 6 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2: | | |
| | The offense was committed for pecuniary gain; §2Q2.1(b)(1)(A) | | +2 |
| | The market value of the fish involved in the case is $1,415,373. Thus a 14-level increase is warranted under § 2Q2.1(b)(3)(A)(ii)(H) | | +14 |
| c. | Acceptance of Responsibility, U.S.S.G. § 3E1.1(a), (b): | | - 3 |
| d. | Zero-Point Offender, U.S.S.G. §  4C1.1(a)(1)-(10) | | -2 |
| e. | Adjusted Offense Level: | | 17 |

The government's understanding, based on the criminal history information in the Presentence Report, is that Chen is a Criminal History Category I. *PSR* ¶ 38. As a result, his Sentencing Guidelines range is 24-30 months. *PSR*. According to data provided by the Judiciary Sentencing Information (JSIN) database, for the last four fiscal years there were seven defendants sentenced whose primary U.S.S.G. was § 2Q2.1, with a final offense level 17 and Criminal History Category I. *PSR* ¶ *83*. Six of the seven defendants were sentenced to terms of custody, and for those individuals, the average length of imprisonment was 11 months, and the median length was seven months. *Id.*

III.     **Sentencing Recommendation**

    a.     **Legal Standard**

The U.S. Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process, and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)  the need for the sentence imposed to afford adequate deterrence to criminal conduct, and;

(4)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

    b.     **The Government's Recommended Sentence Vindicates the 18 U.S.C. §3553(a) Sentencing Factors**

        *1.     The nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense*

Defendant Chen has engaged in a five-and-half year scheme to defraud the U.S. government of over over $40,000 in export duties and fees. This is not a case of Mr. Chen failing to pay "nominal fees," this is not a case of Mr. Chen simply filing export paperwork incorrectly, nor is it a case whose only harm is that "the Secretary of Commerce was prevented from keeping accurate statistics measuring the value and nature of exports leaving the United States." Dkt. 53 (Defense Sentencing Memo).

This is a crime of fraud. This case is about defendant Chen defrauding the U.S. government of over $41,000 in export and custom fees. A custodial sentence for 1) a five-year fraud scheme, that 2) resulted in losses of this amount; 3) based on hundreds of falsified documents; 4) for a defendant with a prior federal criminal conviction for nearly identical conduct, and 5) a decades long history of other

regulatory violations and false export and import filings, along with 6) a history of dozens of seizures of illegally imported wildlife, is necessary and appropriate under 3553(a) given the nature and circumstances of the crime and to reflect the seriousness of the offense. *18 U.S.C. § 3553(a)*

### 2. *The History and Characteristics of the Defendant*

Mr. Chen has found great success in the United States, and has faced few of the hardships and life challenges that many criminal defendants struggle with. He was raise in a stable family, was able to successfully come to the United States from American Samoa, where he married, raised two children, and started a financially successful business. While this success is commendable, it came with responsibility. Most relevant here, Mr. Chen was expected to run his business honestly. Mr. Chen was an educated, successful businessman with decades in the export business; as such, he knew full well, but disregarded, his basic requirement to conduct his business honestly and ethically. There is nothing in Mr. Chen's history that warrants a non-custodial sentence in this case.

Section 3553a also requires the Court to look at Mr. Chen's *characteristics*. Mr. Chen's prior criminal conviction, his history of regulatory offenses, citations, export seizures, his current charges, and his post-indictment criminality, paint a troubling picture of Mr. Chen's character. His pattern of disregard for the law demonstrate a character for dishonesty, for fraud, and for deceit. The defendant's characteristics clearly demonstrate why a custodial sentence is warranted in this case.

### 3. *Need for the sentence to afford adequate deterrence to criminal conduct and to promote respect for the law*

A custodial sentence in this case is also appropriate here to provide both specific deterrence to Mr. Chen, and to promote a respect for the law by Mr. Chen. It is clear that Mr. Chen has not been deterred by his prior criminal conduct. He was charged and convicted in 2009, shown leniency, and yet continued his illegal conduct. The violations continued for years after, and by 2018 (at the latest), Mr. Chen began again engaging in the same fraudulent conduct for which he has been charged in this case.

Even more troubling, within *days* of being arrested and released in this case, Mr. Chen simply restarted his fraudulent export scheme. He paid bribes to an individual, Exporter #1, to illicitly use that exporter's license, began filing false export documents and declarations falsely concealing his identity, and – worst of all – continued to understate and misstate the value of the exports to again evade export

duties. Mr. Chen has admitted to all of this conduct, which began days after he stood up in U.S. Magistrate Court in the federal building in San Francisco and pledged to obey the law, and commit no new crimes. It was the first requirement of his pretrial release, and he violated it within days.

For the next six months, on at least 52 occasions he submitted export paperwork in which he falsely signed documents which concealed his identity and falsely claimed the exports and imports were for another company, Importer #1. And Mr. Chen was not simply content to fraudulently use another individual's export permit to export fish legally, he continued to fraudulently understate the true value of the exports, defrauding the U.S. of yet additional customs and export fees.

Another sentence of probation will do nothing to deter Mr. Chen in the future. A custodial sentence is imperative to insure that Mr. Chen does not simply return to the pattern of criminal activity and the stunning and brazen disregard for export laws that he has demonstrated to date.

Further, a custodial sentence is warranted to send a message of general deterrence to the export community. A non-custodial sentence for Mr. Chen, a convicted criminal with a history of export violations and seizures sends a message that false representations to U.S. Customs and U.S. Fish & Wildlife, and Smuggling, despite being felony offenses will result in minimal criminal consequences.

### 4. *Need to avoid unwarranted sentence disparities among similarly situated defendants*

Section 3553(a) identifies the need for the sentence imposed to afford adequate deterrence, as well as avoid sentencing disparities between similarly situated defendants. The JSIN records provided (but ignored) by U.S. Probation are instructive. *See PSR* ¶¶ 82, 83. According to the JSIN data, the average sentence for a defendant sentenced under the Guidelines for these offenses, U.S.S.G. § 2Q21, who received a sentence of imprisonment (six out of seven total defendants), was 11 months. *Id.* The median sentence was seven months. *Id.* And these calculations only apply to defendants with a Criminal History Category I, presumably primarily individuals with no prior criminal convictions – not for defendants such as Mr. Checn who has a prior misdemeanor conviction for a similar offense. A custodial sentence in this case is necessary to avoid unwarranted sentencing disparities.

//

## IV. CONCLUSION

For all of the reasons above, the government respectfully asks the Court to sentence Mr. Chen to a term of imprisonment of 18 months, followed by three years of supervised release, and order restitution in the amount of $41,292.

DATED: January 9, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ David J. Ward*
DAVID J. WARD
Assistant United States Attorney